**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------- x
COLONY GRILL DEVELOPMENT, LLC      :
and FAIRFIELD COLONY, LLC,         :
                                   :
          Plaintiffs and           :   Civil No. 3:20-cv-213 (AWT)
Counterclaim Defendants,           :
                                   :
v.                                 :
                                   :
COLONY GRILL, INC. and COLONY      :
GRILL OF STAMFORD, LLC,            :
                                   :
                                   :
          Defendants and           :
Counterclaim Plaintiffs.           :
------------------------------- x
```

## ORDER RE MOTION TO DISMISS

Counterclaim Defendants Colony Grill Development, LLC ("CGD") and Fairfield Colony, LLC ("FCLLC") move to dismiss Counts VIII, IX and X of the First Amended Counterclaims ("FAC") (ECF No. 48) asserted by Counterclaim Plaintiffs Colony Grill, Inc. ("CGI") and Colony Grill of Stamford, LLC ("CGS"), pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth below, the motion to dismiss (ECF No. 50) is hereby GRANTED in part and DENIED in part.

The motion is granted with respect to the claim for breach of fiduciary duty in Count IX, and the claim for fraud in Count X based on a misrepresentation to the U.S. Copyright Office and the U.S. Trademark Office. The motion is denied with respect to

the theft of trade secrets claim in Count VIII, the claim in
Count IX for breach of the implied covenant of good faith and
fair dealing, and the claim for fraud in Count X based on a
theory of fraudulent nondisclosure.

**I.    Legal Standard**

When deciding a motion to dismiss a counterclaim under Rule
12(b)(6), the court must accept as true all factual allegations
in the counterclaim and must draw inferences in a light most
favorable to the counterclaim plaintiff. Scheuer v. Rhodes, 416
U.S. 232, 236 (1974). Although a counterclaim "does not need
detailed factual allegations, a [counterclaim] plaintiff's
obligation to provide the 'grounds' of his 'entitle[ment] to
relief' requires more than labels and conclusions, and a
formulaic recitation of the elements of a cause of action will
not do." Bell Atl. Corp. v. Twombly, 550 U.S. 550, 555 (2007)
(citing Papasan v. Allain, 478 U.S. 265, 286 (1986)) (on a
motion to dismiss, courts "are not bound to accept as true a
legal conclusion couched as a factual allegation"). "Nor does a
[counterclaim] suffice if it tenders naked assertions devoid of
further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662,
678 (2009) (quoting Twombly, 550 U.S. at 557). "Factual
allegations must be enough to raise a right to relief above the
speculative level, on the assumption that all the allegations in

the [counterclaim] are true (even if doubtful in fact)."
Twombly, 550 U.S. at 555 (internal citations and quotations
omitted). However, the counterclaim plaintiff must plead "only
enough facts to state a claim to relief that is plausible on its
face." Id. at 547. "A claim has facial plausibility when the
[claimant] pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged." Iqbal, 556 U.S. at 678. "The function of a
motion to dismiss is 'merely to assess the legal feasibility of
the [counterclaim], not to assay the weight of the evidence which
might be offered in support thereof.'" Mytych v. May Dep't Store
Co., 34 F. Supp. 2d 130, 131 (D. Conn. 1999) (quoting Ryder
Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d
774, 779 (2d Cir. 1984)). "The issue on a motion to dismiss is
not whether the [counterclaim] plaintiff will prevail, but
whether the [counterclaim] plaintiff is entitled to offer
evidence to support his claims." United States v. Yale New
Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citing
Scheuer, 416 U.S. at 232).

In its review of a motion to dismiss for failure to state a
claim, the court may consider "only the facts alleged in the
pleadings, documents attached as exhibits or incorporated by
reference in the pleadings and matters of which judicial notice
may be taken." Samuels v. Air Transp. Local 504, 992 F.2d 12,

15 (2d Cir. 1993). "[I]n some cases, a document not expressly incorporated by reference in the [counterclaim] is nevertheless 'integral' to the [counterclaim] and, accordingly, a fair object of consideration on a motion to dismiss. A document is integral . . . 'where the [counterclaim] relies heavily upon its terms and effect.'" Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

## II.  **Counterclaim VIII: Theft of Trade Secrets**

The Counterclaim Defendants assert that the Counterclaim Plaintiffs have not alleged with the requisite particularity the purported trade secrets they claim were misappropriated. They argue that the Counterclaim Plaintiffs: (1) fail to identify with specificity the trade secrets they claim were misappropriated, (2) fail to allege any facts as to steps they took to keep such information secret, and (3) fail to allege any facts supporting their claim that the alleged trade secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person.

A trade secret exists when: "(1) the information is actually secret because it is not generally known to or readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of

the information; (2) the owner thereof has taken reasonable measures to keep such information secret; and (3) the information derives independent economic value, actual or potential, from being secret". 18 U.S.C. §1839(3). Misappropriation includes "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." Id. at §1839(5)(A). "[T]he term 'improper means'-- (A) includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means; and (B) does not include reverse engineering, independent derivation, or any other lawful means of acquisition . . . ." Id. at §1839(6). To prevail on a trade secret claim, a plaintiff must "allege facts sufficient to show that the information in fact is secret—for example by disclosing the measures it took to protect the secrecy of the information . . . ." Mastercraft Decorators, Inc. v. Orlando, 356 F. Supp. 3d 259, 270 (W.D.N.Y. 2018). The plaintiff must also allege how the trade secret "derives independent economic value from not being generally known to others, and not being readily ascertainable through proper means by another person." Kairam, 793 Fed. Appx. at 28.

For purposes of this motion, the court takes as true the following factual allegations in the FAC that are pertinent to

this counterclaim.

"CGI is the current owner of all intellectual property related to the COLONY GRILL branding including trade secrets, know-how, common law and registered trademark rights." FAC at ¶10. "Counterclaim-Plaintiff CGI licensed its intellectual property related to the COLONY GRILL® brand to Counterclaim-Plaintiff CGS through a license agreement, giving CGS the power to sublicense the COLONY GRILL® Marks and other brand assets under certain conditions." Id. at ¶28. In May 2010, CGS entered into a license agreement with Counterclaim Defendant FCLLC (the "2010 FCLLC License Agreement"). FCLLC "expressly agreed that in addition to licensing the overall brand, the Fairfield location would use the same menu, and distinctive hot oil pie recipe as the original COLONY GRILL® in Stamford." Id. at ¶30.

"In furtherance of this goal, CGI provided FCLLC trade secret recipes, vendor information and even trained FCLLC's principals in the management of the business by inviting both the principals and their employees to work and train at the Stamford location for six months." Id. at ¶31. "Indeed, when the new Fairfield location was announced the FCLLC Principals repeatedly gave interviews acknowledging that they received the trade secret "know-how" in order to maintain the beloved brand in the Fairfield location." Id. at ¶32. FCLLC "had even gone so far as to test the pH level of the water supply at the Fairfield

restaurant to ensure that it matched the pH level of the water that the Stamford restaurant used to make its famous pizza." Id. at ¶33.

"On or about September 6, 2011, FCLLC registered a copyright application for the COLONY GRILL EST. 1935 logo, fraudulently representing itself as the owner of the COLONY GRILL® brand to the United States Copyright Office (U.S. Copyright Reg. No. VA0001790152)." Id. at ¶38. "Counterclaim-Defendants failed to disclose this copyright application to Counterclaim-Plaintiffs." Id. at ¶39. "Moreover, FCLLC did not assign the resulting copyright registration to CGI (the rightful owner of the COLONY GRILL® Marks and Logos . . . ." Id. "After two years of a fruitful Licensor-Licensee relationship, the FCLLC Principals asked to negotiate a second license agreement with CGS in order to obtain permission to open additional COLONY GRILL® locations." Id. at ¶40. "Counterclaim-Defendants . . . agreed to expand the business relationship." Id. at ¶41. "The license agreement between CGS and CGD dated June 20, 2012 (the "2012 [CGD] License Agreement") governs the use of the COLONY Grill® brand and assets on all locations except for use within 15 miles of Stamford (the original location owned by CGI), Avon (a location opened in 2012 by Counterclaim-Plaintiffs) and Fairfield (governed by the 2010 license)." Id. at ¶42.  Each of the 2012 CGD License Agreement and the June 20, 2012 Agreement

between CGI and CGD (see FAC, Ex G) (the "CGD Cross Agreement")

contains a similar provision. The CGD Cross Agreement reads:

> "Licensed Know How" shall mean the right to use the
> operating know-how, including all recipes, methods,
> processes, and procedures used to operate a pizzeria known
> as "Colony Grill", and such other goods and services
> specified in Appendix A hereto in connection with the
> operation of the Colony Grill of Fairfield.

Id. at Ex G at 2.

The Counterclaim Defendants stopped paying royalties to CGI

in September 2019.

The Counterclaim Defendants' first point is that the

Counterclaim Plaintiffs fail to identify with specificity the

trade secrets they claim were misappropriated. "An alleged trade

secret is not deprived of trade secret status simply because it

is comprised of materials that are 'common [and] commercially

available'. Rather, a 'plaintiff's ability to combine these

elements into a successful process, like the creation of a

recipe from common cooking ingredients is a trade secret

entitled to protection.'" Dreamcatcher Software Development, LLC

v. Pop Warner Little Scholars, Inc., 298 F. Supp. 2d 276, 282

(D. Conn. 2004) (quoting Elm City Cheese Co., v. Federico, 251

Conn. 59, 74-75 (1999)).

Here, the Counterclaim Plaintiffs allege that CGI provided

FCLLC, inter alia, trade secret recipes and that "the FCLLC

Principals repeatedly gave interviews acknowledging that they

received the trade secret "know-how." Id. at ¶32. In addition, the 2010 FCLLC License Agreement, the 2012 CGD License Agreement and the CGD Cross Agreement are exhibits to the pleadings and each states that the "Licensed Know How" includes "all recipes, methods, processes, and procedures used to operate a pizzeria known as 'Colony Grill' . . . ." CGD Cross Agreement at 2.

The Counterclaim Defendants' second point is that the Counterclaim Plaintiffs fail to allege any facts as to steps they took to keep any such information secret. The Counterclaim Defendants assert that the Counterclaim Plaintiffs "conclusorily allege that they have 'taken reasonable measures to keep such information secret.'" Memorandum of Law in Support of the Motion to Dismiss (ECF No. [50-1]), ("Countercl. Defs.' Mem.") at 13. The court agrees with the Counterclaim Plaintiffs that they have satisfied their burden with respect to this element of the counterclaim by virtue of the confidentiality provisions and prohibitions on assignment contained in each of the CGD Cross Agreement and the 2012 CGD License Agreement. Section 8(b) of the CGD Cross Agreement provides that a "Receiving Party" shall maintain "Confidential Information" it receives from a "Disclosing Party" in confidence and will use the same only in accordance with the agreement. The definition of "Confidential Information" in Section 1(b) includes know-how and trade secrets. Sections 13(b) and 1(b) of the 2012 CGD License

Agreement contain the same language. See Powerweb Energy, Inc. v. Hubbell Lighting, Inc., No. 3:12CV220 WWE, 2012 WL 5835392, at *4 (D. Conn. Nov. 16, 2012)(owner's information shared under an agreement with a confidentiality provision was sufficient to plead protective measures were taken by plaintiff and thus protectable as trade secrets); Myung Ga, Inc. v. Myung Ga of MD, Inc., 2011 WL 3476828, at *7 (D. Md. Aug. 8, 2011)("To the contrary, the exclusive nature of the license with Myung Ga of S & S, Inc., and the fact that it did not allow for assignment of rights, suggests that Plaintiff took measures to ensure the secrecy of its recipes.").

The Counterclaim Defendants' third point is that the Counterclaim Plaintiffs fail to allege any facts supporting their claim that the alleged trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person. An inference that the alleged trade secrets have such economic value is supported by the fact that the Counterclaim Defendants paid royalties under license agreements with the Counterclaim Plaintiffs for nearly a decade. In addition, the Counterclaim Plaintiffs cite to statements and actions by the Counterclaim Defendants that support such an inference. The principals of the Counterclaim Defendants stated that they were "not looking to re-invent the wheel." FAC ¶32. The FCLLC principals "even got

the model numbers from the Stamford equipment to make sure that
everything is the same." Id. FCLLC also had gone so far as to
test the pH level of the water supply at the Fairfield
restaurant to make sure that it matched the pH level at the
Stamford restaurant.

Thus, the motion to dismiss is being denied with respect to
Counterclaim VIII.

## III. Counterclaim IX: Breach of Fiduciary Duty

Count IX includes two claims, one of which is a claim for
breach of fiduciary duty. The Counterclaim Defendants argue that
they do not owe a fiduciary duty to the Counterclaim Plaintiffs.
The court agrees.

The existence of a legal duty is a question of law to be
determined by the court. See Iacurci v. Sax, 313 Conn. 786, 795
(2014)("[T]he trial court's determination that the defendants
owed the plaintiff a fiduciary duty was a conclusion of law not
subject to deference on appeal"). The Counterclaim Plaintiffs
cite to Garden Catering-Hamilton Ave., LLC v. Wally's Chicken
Coop, LLC, 2014 WL 2765726 (D. Conn. Jun. 18, 2014) for the
proposition that "[w]hether a fiduciary duty exists is a
question of fact, typically inappropriate for resolving on an
undeveloped record at the outset of the case." Memorandum of Law
in Opposition to the Motion to Dismiss, (ECF No.
[56])("Countercl. Pls.' Opp'n.") at 23. However, it appears that

in that case there were genuine issues of material fact to be resolved before the question of whether a fiduciary duty existed could be resolved.

In Iacurci v. Sax, the Connecticut Supreme Court discussed the standard for determining whether a fiduciary relationship exists:

> Turning to the standard for determining whether a fiduciary relationship exists, this court has recognized that some actors are per se fiduciaries by nature of the functions they perform. These include "agents, partners, lawyers, directors, trustees, executors, receivers, bailees and guardians." (Internal quotation marks omitted.) Falls Church Group, Ltd. v. Tyler, Cooper & Alcorn, LLP, supra, 281 Conn. at 108–109, 912 A.2d 1019. Beyond these per se categories, however, a flexible approach determines the existence of a fiduciary duty, which allows the law to adapt to evolving situations wherein recognizing a fiduciary duty might be appropriate. Id. This court has instructed that, "[a] fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other . . . . The superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him." (Internal quotation marks omitted.) Id., at 108, 912 A.2d 1019.

313 Conn. 786, 800 (2014). "[C]ases considering whether ad hoc fiduciary duties existed in business relationships have turned on the presence of a special vulnerability." Id. at 801.

The Counterclaim Plaintiffs argue that the "facts as pleaded show that Counterclaim-Defendants must act in a manner that benefits Counterclaim-Plaintiffs and their interests. This is in part because it is black-letter law that the use of

licensed trademarks inures to the benefit of the licensor."
Countercl. Pls.' Opp'n at 23-24. (Emphasis in
original)(citations omitted). However, the facts alleged here
show only that the Counterclaim Defendants must act in a manner
that benefits the Counterclaim Plaintiffs as a result of the
fact that they must comply with the license agreements, not that
there is a relationship characterized by a unique degree of
trust and confidence in which the party who is claimed to be a
fiduciary has superior knowledge, skill, or expertise and the
person who hired the fiduciary has a special vulnerability. In
fact, as the Counterclaim Defendants point out, the Counterclaim
Plaintiffs are the ones who have superior knowledge, skill and
expertise with respect to the production of the Colony Grill Bar
Pie.

Thus, the motion to dismiss is being granted with respect
to the claim for breach of fiduciary duty in Counterclaim IX.


IV.  **Counterclaim IX: Breach of Implied Covenant of Good Faith
     and Fair Dealing**

The other claim in Count IX is a claim for breach of the
implied covenant of good faith and fair dealing. The
Counterclaim Defendants contend that because they do not owe a
fiduciary duty to the Counterclaim Plaintiffs, there is no
implied covenant of good faith and fair dealing. They assert

that "[t]he duty of 'fair dealing' exists alongside, and is
dependent upon the existence of, a fiduciary duty." Countercl.
Defs.' Mem. at 16.

Under Connecticut law, "[t]he existence of a contract
between the parties is a necessary antecedent to any claim of
breach of the duty of good faith and fair dealing." Hoskins v.
Titan Value Equities Group, Inc., 252 Conn. 789, 793 (2000). "To
constitute a breach of the implied covenant of good faith and
fair dealing, the acts by which a defendant allegedly impedes
the plaintiff's right to receive benefits that he or she
reasonably expected to receive under the contract must have been
taken in bad faith." Geysen v. Securitas Sec. Services USA,
Inc., 322 Conn. 385, 399–400 (2016). "It is axiomatic that the
implied duty of good faith and fair dealing is a covenant
implied into a contract or a contractual relationship." Hoskins,
252 Conn. at 793. "When one party performs the contract in a
manner that is unfaithful to the purpose of the contract and the
justified expectations of the other party is thus denied, there
is a breach of the covenant of good faith and fair dealing[.]"
Landry v. Spitz, 102 Conn. App. 34, 44 (2007). So the duty of
good faith and fair dealing is dependent upon the existence of a
contract or a contractual relationship, not upon the existence
of a fiduciary duty.

Thus, the motion to dismiss is being denied with respect to

the claim for breach of the implied covenant of good faith and

fair dealing in Counterclaim IX.


**V.     Counterclaim X: Fraudulent Nondisclosure**

The Counterclaim Plaintiffs assert two theories of fraud in

Counterclaim X. The first theory is set forth in ¶138 of the

FAC:

> Counterclaim-Defendants FCLLC and CGD (and its related
> entities and agents) conspired to commit fraud by expressly
> and impliedly stating their acknowledgement of
> Counterclaim Plaintiff CGI's ownership of the COLONY
> GRILL® Marks and Logos to Counterclaim Plaintiffs, a
> representation that Counterclaim-Plaintiffs detrimentally
> relied on by continuing and expanding their relationship
> with Counterclaim-Defendants instead of seeking
> alternative licensees or manager companies. During this
> period of reliance, Counterclaim-Defendants
> surreptitiously applied to register the COLONY GRILL®
> Marks and Logos which has already resulted in one copyright
> registration listing FCLLC as the copyright owner.

FAC at ¶138.

For purposes of this motion, the court takes as true the

following factual allegations in the FAC that are pertinent to

this counterclaim.

"On or about September 6, 2011, FCLLC registered a

copyright application for the COLONY GRILL EST. 1935 logo,

fraudulently representing itself as the owner of the Colony

Grill® brand to the United States Copyright Office (U.S.

Copyright Reg. No. VA0001790152)." FAC at ¶38. "Notwithstanding

their acknowledgement of CGI's ownership of the COLONY GRILL®

Marks and Logos in the [2010 FCLLC License Agreement],
Counterclaim-Defendants failed to disclose this copyright
application to Counterclaim-Plaintiffs. See, e.g., Compl. Ex. F,
at 5(b) ("Licensor shall not challenge the validity or
Licensor's ownership of the Licensed Marks and Logos and
Licensed Know-How.")" Id. at ¶39. "Moreover, FCLLC did not
assign the resulting copyright registration to CGI (the rightful
owner of the COLONY GRILL® Marks and Logos) . . . ." Id. "After
two years of a fruitful Licensor-Licensee relationship, the
FCLLC Principals asked to negotiate a second license agreement
with CGS in order to obtain permission to open additional COLONY
GRILL® locations." Id. at ¶40. "Counterclaim-Defendants relied,
to their detriment on Counterclaim-Defendants' continued
acknowledgement of CGI's ownership of the brand, unaware that
Counterclaim-Defendants were planning to continue to falsely
portray themselves as the owners, and agreed to expand the
business relationship." Id. at ¶41. "The license agreement
between CGS and CGD dated June 20, 2012 (the "2012 [CGD] License
Agreement") governs use of the COLONY GRILL® brand and assets on
all locations except for use within 15 miles of Stamford (the
original location owned by CGI), Avon, (a location opened in
2012 by Counterclaim-Plaintiffs) and Fairfield (governed by the
2010 license) . . . ." Id. at ¶42. "As the trademark owner and
master licensor, CGI also entered into a Cross-Agreement with

CGD . . . dated June 20, 2012 (the "CGD Cross Agreement")." <u>Id</u>.
at ¶43. "Around the same time of the negotiation of the 2012 CGD
License Agreement, the FCLLC Principals pursued and negotiated
an agreement with CGI that would allow the FCLLC Principals to
operate the original Stamford location as manager (the "2012
Management Agreement")." <u>Id</u>. at ¶44. "Both the 2010 FCLLC
License Agreement and the 2012 CGD License Agreement require
that Counterclaim-Defendants expressly recognize CGI's ownership
of the COLONY GRILL® Marks and contain a no contest clause
prohibiting the Licensee from challenging the COLONY GRILL®
Marks and logos (and/or Counterclaim-Plaintiffs' ownership of
the same), and additionally prohibit Counterclaim-Defendants
from acting in any manner that would damage Counterclaim
Plaintiffs' ownership of the marks and/or reputation." <u>Id</u>. at
¶47.

> [T]he essential elements of an action in common law fraud
> . . . are that: (1) a false representation was made as a
> statement of fact; (2) it was untrue and known to be
> untrue by the party making it; (3) it was made to induce
> the other party to act upon it; and (4) the other party
> did so act upon that false representation to his injury
> . . . Under a fraud claim of this type, the party to whom
> the false representation was made claims to have relied
> on that representation and to have suffered harm as a
> result of the reliance . . . In contrast to a negligent
> representation, [a] fraudulent representation . . . is
> one that is knowingly untrue, or made without belief in
> its truth, or recklessly made and for the purpose of
> inducing action upon it . . . This is so because
> fraudulent misrepresentation is an intentional tort."
> <u>Sturm v. Harb Development, LLC</u>, 298 Conn. 124, 142 (2010)
> (Internal quotation marks and citations omitted).

Parola v. Citibank (South Dakota) N.A., 894 F.Supp.2d 188, 200,
(D. Conn. 2012).

"In alleging fraud or mistake, a party must state with
particularity the circumstances constituting fraud or mistake."
Fed. R. Civ. P. 9(b). To satisfy this requirement, the claimant
must plead facts that: "(1) specify the statements that the
plaintiff contends were fraudulent, (2) identify the speaker,
(3) state where and when the statements were made, and (4)
explain why the statements were fraudulent." Aesthetic &
Reconstructive Breast Center, LLC v. United Healthcare Group,
Inc., 367 F.Supp. 3d 1, 5-6 (D. Conn. 2019). "Usually, mere
nondisclosure does not amount to fraud[.] Nondisclosure may,
however, amount to fraud when there is a failure to disclose
known facts under circumstances that impose a duty to speak[.]
In addition, once a [party] undertakes to speak on a subject,
the [party] must then make a full and fair disclosure as to that
subject." Dockter v. Slowik, 91 Conn. App. 448, 458 (2005).

The Counterclaim Defendants argue that the Counterclaim
Plaintiffs fail to allege fraud with particularity as required
by Rule 9(b). They also argue that the Counterclaim Plaintiffs
"repeatedly assert that the 'fact' that they claim Counterclaim-
Defendants acknowledged—Colony Grill, Inc.'s ownership of the
Colony Grill brand—is true . . . [and] Counterclaim-Plaintiffs

- 18 -

cannot plead fraud based on a statement that they explicitly
allege is true, and for which they fail to allege any fraudulent
intent on the part of Counterclaim-Defendants." Countercl.
Defs.' Mem. at 21.

Both of these arguments are unavailing. The factual
allegations set forth above support a conclusion that the
Counterclaim Defendants concealed the fact that FCLLC had filed
a copyright application in 2011 and obtained a copyright for the
COLONY GRILL EST. 1935 logo, and that the nondisclosure was
fraudulent because CGD and FCLLC had a duty to disclose that
fact so the Counterclaim Plaintiffs would not be misled by the
fact that the Counterclaim Defendants acknowledged the validity
of CGI's ownership of the marks and logos.

Thus, the motion to dismiss is being denied as to the claim
for fraud based on a theory of fraudulent nondisclosure.


## VI.   Counterclaim X: Misrepresentation to U.S. Copyright Office and U.S. Trademark Office

Counterclaim X asserts a second theory of fraud in ¶139 of
the FAC, which states:

> Counterclaim-Defendants FCLLC and CGD further conspired to
> commit fraud by misrepresenting themselves to the U.S.
> Copyright Office and U.S. Trademark Office as the rightful
> owners of exclusive rights to use the COLONY GRILL® Marks
> and logos while they were still in a business relationship
> with Counterclaim-Plaintiffs. The Copyright Office has
> relied on this misrepresentation by granting a certificate
> of registration. The U.S. Trademark Office has relied on

this misrepresentation by accepting the application for review and will continue to rely on this misrepresentation while reviewing the pending application. By applying to register CGI's trademark, Counterclaim-Defendants intended to cause injury to Counterclaim-Plaintiff CGI and its ownership of its long-time brand and therefore CGI was the intended recipient of the fraud.

FAC at ¶139.

The Counterclaim Defendants argue that the fraud counterclaim should be dismissed to the extent it relies on this theory of fraud because the Counterclaim Plaintiffs fail to allege that they relied on any supposed misrepresentation. The court agrees.

The third and fourth elements of a fraud claim under Connecticut law are that a false representation was made: (3) "to induce the other party to act upon it; and (4) the other party did so act upon the false representation to his injury". Parola, 894 F.Supp.2d at 200. The theory of fraud at issue here relies on a false representation that was made to induce the U.S. Copyright Office and U.S. Trademark Office (not the Counterclaim Plaintiffs) to act upon it. Also, this theory of fraud relies on harm to the Counterclaim Plaintiffs, not harm the party to whom the false representation was made.

Thus, the motion to dismiss is being granted as to the claim for fraud based on a misrepresentation to the U.S. Copyright Office and the U.S. Trademark Office.

It is so ordered.

Dated this 24th day of February 2021, at Hartford, Connecticut.


_____
/s/ AWT
Alvin W. Thompson
United States District Judge